## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
## CIVIL DIVISION

**RONALD TAYLOR**, individually and on
behalf of all those similarly situated,

      Plaintiff,

vs.

**CERTIFIED LEGAL FUNDING, INC.**

      Defendant.

_____/

**CLASS REPRESENTATION**

Case No.:

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, **Ronald Taylor** ("Taylor"), individually, and on behalf of all those similarly situated, brings this action against Defendant, **Certified Legal Funding**, ("CLF"), and alleges as follows:

### Jurisdiction, Parties, and Venue

1.     This is a class action pursuant to Rule 1.220(b), Florida Rules of Civil Procedure, seeking declaratory relief, injunctive relief, and/or damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs, and attorneys' fees.

2.     This action is brought pursuant to Florida's Deceptive and Unfair Trade Practices Act, Chapter 501, Florida Statutes ("FDUTPA"); Florida's Consumer Finance Act, Chapter 516, Florida Statutes ("CFA"); and Florida's Interest, Usury and Lending Practices Act, Chapter 687, Florida Statutes ("Usury Act").

3.     At this time, the Plaintiff does not have reason to believe that the amount in controversy exceeds $5,000,000.00.

1

4.     The Defendant is a Florida corporation with its principle place of business in Hillsborough County.

5.     Venue is proper in Hillsborough County, Florida, because the Defendant has contracted for its customary business in Hillsborough County, Florida, and one or more of the causes of action set forth below arose and/or accrued in Hillsborough County, Florida. In addition, the Investment Agreement calls for any disputes to be litigated in Hillsborough County, Florida.

6.     Taylor is and was at all times material, a citizen of the State of Florida.

7.     All conditions precedent to the commencement and prosecution of this action and granting of the relief requested have been performed, satisfied, excused, or waived.

### General Background Allegations

8.     CLF is in the business of litigation loan funding whereby it assigns/loans a sum of money to a party in litigation.

9.     In return, on top of the up-front fees and costs charged to the consumer, CLF also seeks to recover their principle amount together with interest at rates greater than 18%, if the loaned party reaches a successful verdict or settlement.

10.     CLF uses a standard form "Investment Agreement" to contract with consumers in the State of Florida, such as the one it entered into with Taylor, a true and correct copy of which is attached as **Exhibit 1** ("Agreement").

11.     The Agreement is a funding arrangement that benefits CLF as Section 3 of it states that Taylor "hereby unconditionally and irrevocably grants, assigns, transfers, and conveys to CLF the right to be paid . . . from the Proceeds" of the lawsuit that is being funded. *See* Exhibit 1, at p. 2.

12.     CLF engaged and continues to engage in the business of loaning, selling, conveying, and assigning sums of money to individuals throughout the State of Florida, in order to gain an

"Interest in the Proceeds" of a verdict or settlement.

## Taylor's Transaction with CLF

13.     The Agreement between Taylor and CLF is a litigation loan-funding agreement whereby CLF loaned Taylor $4,945.00, on two occasions, for a total of $10,839.82, in exchange for a promise to pay CLF out of any funds he may receive from her pending litigation. *See* Exhibit 1.

14.      From the face of the Agreement itself, CLF charged Taylor interest for his $4,945.00 loan around 51% (depending on when repaid), in addition to a processing fee of $600.00, and an Origination Fee of $345.00 (charged every 6 months). *See* Exhibit 1, at pp. 3 and 7.

15.     The interest rates contracted for by CLF are in excess of those permitted to be charged pursuant to the CFA and the Usury Act.

## Background Information Concerning the CFA's Applicability to Taylor's Transaction

16.     Section 516.01, Florida Statutes, defines who is subject to the CFA as follows:

> (1)     "Consumer finance borrower" or "borrower" means a person who has *incurred either direct or contingent liability* to repay a consumer finance loan.

> (2)     "Consumer finance loan" means a loan of money, credit, goods, *or choses in action*, including, except as otherwise specifically indicated, provision of a line     of credit, in an amount or to a value of $25,000 or less for which the lender charges, contracts for, collects, or receives *interest at a rate greater than 18     percent per annum.*
> [*emphasis added*].

17.     CLF's Agreement is a "loan" and/or a "chose in action" which, pursuant to Section 516.01, Florida Statutes, makes the Agreement subject to the CFA.

18.      A loan is "[a]n act of lending; a grant of something for temporary use . . . A thing lent for the borrower's temporary use; or a sum of money lent at interest." *Loan, Black's Law Dictionary* (10th ed. 2016).

19.     CLF lent Taylor a sum of money in exchange for an interest in the proceeds of his case.

20.    A chose in action is "[a] proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, *or a claim for damages in tort* . . . The right to bring an action to recover a debt, money, or thing . . . Personal Property that one person owns but another person possesses, the owner being able to regain possession through lawsuit." [e*mphasis added*]. *Chose in Action, Black's Law Dictionary* (10th ed. 2016).

21.    CLF contracted for a chose in action with Taylor through the Agreement as CLF has an interest in his litigation proceeds if he in any way receives funds "as a result of his legal claim." *See* Exhibit 1, at p. 2, Sections 3 and 7. Notably, section 7 states that the Agreement shall not be construed as a chose in action. This is entirely meaningless since the very same sentence of section 7 states "this Agreement constitutes a non-recourse sale of an interest in contingent Proceeds from the Claims", which by legal definition is a chose in action.

22.     CLF also contracted for the right to the Taylor's property (money) as the Agreement explicitly states he must pay them before he can distribute funds to anyone else.  *See* Exhibit 1, at pp. 2 and 3, Sections 2, 3 and 8.

23.    CLF's Agreement directly meets the definition of a chose in action (despite stating the definition and then further declaring it to not be a chose in action) and subjects them to the provisions of the CFA.

### **Class Action Allegations**

24.    Pursuant to Rule 1.220, Florida Rules of Civil Procedure, the Plaintiff, together with such other individuals that may join this action as class representatives hereby brings this action on his own behalf and on behalf of all those similarly situated.

25.    As used herein, the "Class" consists of and is defined as follows:

Any and all persons who, within 4 years of filing this lawsuit through the date of the final judgment in this action (the "Class Period"):

4

(1) Entered into Investment Agreements with CLF in the State of Florida; or

(2) entered into Investment Agreements with CLF in the State of Florida and were charged in excess of the maximum interest rate and fees allowed pursuant to Sections 516.02, and 515.031, Florida Statutes during the Class Period.

26.   In the event this Court declares the Agreement illegal under the CFA, then the Class will also consist of all persons who borrowed money from CLF in the State of Florida and were charged in excess of the maximum interest rate under allowed the CFA and/or the Usury Act, within 4 years of the filing of this lawsuit until such time as this case is certified.

27.   The Plaintiff reserves the right to amend the Class definition as discovery proceeds and to conform to the evidence and applicable law.

28.   While the exact number of class members is unknown at this time, the Plaintiff estimates there are in excess of forty and more likely hundreds of individuals throughout the State of Florida who are potential class members in this action.

29.   The number of class members is so numerous that separate joinder of each member is impractical.

30.   There are questions of law and fact that are common to the Class, including, but not limited to the following:

   a.      Is the CFA applicable to CLF's Investment Agreements;

   b.      Is the rate of interest charged by CLF to consumers in the State of Florida in excess of the rates allowed under the CFA and the Usury Act; and

   c.      Are CLF's Investment Agreements illegal pursuant to applicable Florida law.

31.   Based on the facts and circumstances set forth herein, the Plaintiff's claims are typical of the claims of the members of the class.

32.   As required by Rule 1.220(a)(4), Florida Rules of Civil Procedure, Taylor will fairly and adequately protect and represent the interests of each member of the Class.

5

33.    Taylor retained the undersigned attorneys who are experienced in handling class actions for over 15 years.  As a result, the undersigned attorneys are qualified and experienced in class action litigation and they will adequately protect the interests of the Class.

34.    The Plaintiff brings this class action pursuant to Rule 1.220(b)(2), Florida Rules of Civil Procedure, as a result of the Defendant's actions or omissions as alleged herein, are generally applicable to all class members thereby making declaratory and injunctive relief concerning the class as a whole appropriate.

35.    The Plaintiff also brings this class action under Rule 1.220(b)(3), Florida Rules of Civil Procedure, because common questions of fact and law exist as to all class members and such questions predominate over any questions solely affecting any individual member of the class.

**COUNT I**
**VIOLATIONS OF THE FLORIDA CONSUMER FINANCE ACT:**
**EXCESSIVE INTEREST RATES**
**CHAPTER 516, FLORIDA STATUTES**
**(Declaratory Relief)**

36.    This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, the Florida Declaratory Judgment Act, brought by Taylor and the Class against CLF.

37.    Taylor re-alleges and incorporates by reference paragraphs 1-35 above.

38.    Section 516.02, Florida Statutes, provides in pertinent part:

(1)    A person must not engage in the business of making consumer finance loans unless she or he is authorized to do so under this chapter or other statutes and unless the person first obtains a license from the office.

(2) (a) A person who is engaged in the business of making loans of money, except as authorized by this chapter or other statutes of this state, may not directly or indirectly charge, contract for, or receive any interest or consideration greater than 18 percent per annum upon the loan, use or forbearance of money, goods or choses in action, or upon the loan or use of credit, of the amount or value of $25,000 or less.

(c)    A loan for which a greater rate of interest or charge than is allowed by this chapter has been contracted for or received, wherever made, is not enforceable in this state, and each person who in any manner participates therein in this state is subject to this chapter. However, this paragraph does not apply to loans legally made to a resident of another

6

state by a person within that state if that state has in effect a regulatory small loan or consumer finance law similar in principle to this chapter.

39.    Section 516.031, Florida Statutes, limits interest charged, contracted for, or received by licensees, and provides:

> (1)    INTEREST RATES-Every licensee may lend any sum of money not exceeding $25,000. A licensee may not take a security interest secured by land on any loan less than $1,000. The licensee may charge, contract for, and receive thereon interest charges as provided and authorized by this section. The maximum interest rate shall be 30 percent per annum, computed on the first $2,000 of the principal amount as computed from time to time; 24 percent per annum on that part of the principal amount as computed from time to time exceeding $2,000 and not exceeding $3,000; and 18 percent per annum on that part of the principal amount as computed from time to time exceeding $3,000 and not exceeding $25,000 . . . .

40.    Taylor maintains that CLF engaged in the business of making loans and/or chose in actions of money, and directly or indirectly, charged, contracted for, or received interest greater than 18 percent per annum in violation of Section 516.02(2) (a), Florida Statutes.

41.    CLF is not licensed as a consumer finance lender with the Office of Financial Regulation and has never been so licensed.

42.    Taylor maintains that CLF must be licensed as a consumer finance lender pursuant to the CFA.

43.    CLF engaged and continues to engage in the business of making loans and/or chose in actions of money, and directly or indirectly, charged, contracted for, or received interest greater than the statutory maximum rates in violation of Section 516.03(1), Florida Statutes.

44.    CLF regularly made and continues to make consumer loans and/or chose in actions to Florida consumers at rates far in excess of the allowable limits in the CFA.

45.    All of CLF's agreements made in violation of the CFA are illegal and unenforceable.  *See* §516.2(c), Fla. Stat.

46.    Taylor and the Class are in doubt concerning their rights, and a bona fide present controversy exists between Taylor, the Class and CLF concerning the proper interpretation of the CFA and the Usury Act, and other applicable law, and the express terms of CLF's Agreement and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to the following:

(a)    Was CLF lawfully able to charge in interest in excess of the rates allowed under the CFA and the Usury Act?

(b)    What are the parties' respective rights and obligations concerning the CFA and the Usury Act in relation to CLF's Investment Agreements?

47.    The rights, status, or other equitable or legal relations of the parties are affected by the CFA and the Usury Act and other applicable law, and the express terms of CLF's investment agreements.  Accordingly, pursuant to Chapter 86, Florida Statutes, Taylor and the Class may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

48.    Section 86.011, Florida Statutes states that this Court has "jurisdiction … to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Thus, regardless of whether injunctive relief is available to Taylor under Count II and regardless of whether damages are available to Taylor under Count III, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the CFA, the Usury Act and/or the subject investment agreements.

49.    Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence … Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether CLF's conduct has been unlawful, in order to prevent the

8

same unlawful conduct in the future.

50.    Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a … contract, … or whose rights, status, or other equitable or legal relations are affected by a statute … may have determined any question of construction or validity arising under such statute, … contract, … or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as Taylor) who is in doubt about her rights under the CFA, the Usury Act and/or the CLF's Agreement.  Because CLF regularly and routinely provides litigation loan funding to consumers in the State of Florida, the issues raised in this declaratory relief claim affects Taylor and the Class members on an ongoing and continuing basis.

51.    Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether CLF's investment agreements violate Florida law and are thus void.

52.    Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of the CLF's past conduct, in order to gauge their anticipated future conduct and to prevent unlawful conduct in the future.

53.    Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in

other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury."  Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

54.     Section 86.101, Florida Statutes states, "This chapter is declared to be substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed."  Thus, Chapter 86 is substantive in nature, and this Court must liberally administer and construe Chapter 86, in order to afford the parties relief from insecurity and uncertainty with respect to their respective rights, status, and other equitable or legal relations under the CFA, the Usury Act and CLF's investment agreements.

55.     Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief."  Again, this statute confirms that declaratory relief is available under Chapter 86, regardless of whether injunctive relief is available under Count II and regardless of whether damages are available to Taylor and the Class under Count III.

### COUNT II
### VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES, CHAPTER 501, PART II, FLORIDA STATUTES
#### (Injunctive Relief and Damages)

56.     This is a class action for injunctive relief under FDUTPA brought by Taylor and the Class against CLF.

57.     Taylor re-alleges and incorporates by reference paragraphs 1-35, and 41 above.

58.     FDUTPA provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby

10

declared unlawful."

59.     In the course of offering, arranging, making and collecting on illegal consumer loans, CLF has engaged in unfair and deceptive acts or practices in trade or commerce in violation of Section 501.204(1), Florida Statutes.

60.     CLF's unfair and deceptive acts or practices include, but are not limited to, the following:

>    (a)    Engaging in unfair business enterprise of offering, making, and collecting on consumer loans to Florida borrowers, when such loans are in plain violation of the CFA and/or the Usury Act of this State and violate the public policy of this State;

>    (b)    Continuing to offer, make, and collect on consumer loans in willful violation of Florida law;

>    (c)    Making and collecting on loans at oppressive and unfair rates, and making such loans without accounting for the borrower's ability to repay; and

>    (d)    Failing to even state the usurious interest rates being charged in the investment agreements them self.

61.     Thus, CLF has engaged in and is engaging in unfair or deceptive or unconscionable acts or practices in the conduct of any trade or commerce in violation of Sections 501.203(3)(c), and 501.204(1), Florida Statutes.

62.     As a result of CLF's unfair or deceptive or unconscionable acts or practices, Taylor and the Class were damaged.

63.     CLF willfully engaged in the acts and practices alleged herein.

64.     These above-described acts and practices of CLF have injured and will likely continue to injure and prejudice Taylor and the Class, who were aggrieved by CLF's acts and practices as described above.

65.     Further, Section 516.07(1), Florida Statutes, prohibits deceptive acts or practices both in connection with a loan and/or chose in action for unreasonable collection practices the CFA.

66.     Accordingly, CLF's activities are prohibited by the CFA and Taylor and the Class are

11

entitled to injunctive relief prohibiting CLF from offering or making any consumer loans and/or chose in actions to Florida borrowers in violation of the CFA and from collecting on or retaining any interest or charges collected from Florida borrowers on such loans and/or chose in actions.

67.    Unless CLF is temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, their actions will result in irreparable injury to Taylor and the Class for which there is no adequate remedy at law.

**COUNT III**
**VIOLATIONS OF FLORIDA INTEREST, USURY AND LENDING PRACTICES**
**CHAPTER 687, FLORIDA STATUTES**
**(Damages)**

68.    This is a class action for damages brought by Taylor and the Class against CLF under the CFA and the Usury Act

69.    Taylor re-alleges and incorporates by reference paragraphs 1-35, and 41 above.

70.    CLF made loans of money to Taylor and the Class and willfully and knowingly charged, took, or received interest grossly exceeding the rates and charges permitted by the CFA and the Usury Act.  *See* §§516.02, 516.031, 687.03(1), 687.071(2) and 687.071(3), Fl. Stat.

71.    The Usury Act provides the maximum interest rate that may be charged on loans and/or chose in actions is 18% per annum simple interest. Per Section 687.03(1), Florida Statutes:

> (1)    Except as provided herein, it shall be usury and unlawful for any person, or for any agent, officer, or other representative of any person, to reserve, charge, or take for any loan, advance of money, line of credit, forbearance to enforce the collection of any sum of money, or other obligation a rate of interest greater than the equivalent of 18 percent per annum simple interest, either directly or indirectly, by way of commission for advances, discounts, or exchange, or by any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater that the actual principal sum received, together with interest at the rate of the equivalent of 18 percent per annum simple interest.

72.    Section 687.071, Florida Statutes, further identifies and prohibits criminal usury rates, and provides:

12

(2)    Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, commits a misdemeanor of the second degree, punishable in s. 775.082 or s. 775.083.

73.    As a result of CLF's violations of the CFA and the Usury Act, Taylor and the Class were harmed.

## COUNT IV
## UNJUST ENRICHMENT
### (Damages)

74.    This is a class action for unjust enrichment, pled in the alternative to Counts II (damages only) and Count III above, brought by Taylor and the Class against CLF for its unlawful loans and/or chose in actions in the State of Florida at interest rates greater than allowed by Florida law.

75.    Taylor re-alleges and incorporates by reference paragraphs 1-35, and 41 above.

76.    As a result of the conduct described above, CLF has been and will be unjustly enriched at the expense of Taylor and the Class.

77.    Specifically, CLF contracted for and/or charged interest to Taylor and the Class at rates for in excess of what is permissible pursuant to Florida law.

78.    Taylor and the Class conferred a benefit on CLF by contracting with and paying on the investment agreements, which had knowledge of the benefit.

79.    CLF voluntarily accepted and retained the benefits conferred on them.

80.    The circumstances render CLF's retention of the benefit inequitable unless they pay to Taylor and the Class the value of the benefit.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Honorable Court to award the following relief in favor of Taylor and the Class against CLF:

(a)  An order certifying Counts I through IV are properly maintainable pursuant to Rule 23(b)(1), (2) and (3), Federal Rules of Civil Procedure and appointing Taylor to represent the Class defined herein, and appointing the undersigned law firms as class counsel;

(b)  A declaration that: i) CLF's investment agreements are subject to the CFA; ii) on their face, CLF's investment agreements, including the Agreement, violate the CFA and the Usury Act; and iii) CLF's investment agreements, including the Agreement, are unenforceable as specifically provided in the CFA.

(c) A temporary and permanent injunction prohibiting CLF,  and their owners, directors, officers, agents, employees, subsidiaries, and affiliates, and those persons in active concert or participation with those who receive actual notice of the Court's Orders, from engaging in any activity within the State of Florida, or from outside the State of Florida but involving Florida businesses or Florida residents, which relates in any way to the offering, making, arranging, servicing or collecting on loans or choses in action to Florida residents that violate the CFA and/or Usury Act;

(d)  Damages in the form of a refund by CLF of any and all money collected by them above and beyond any principal loaned pursuant to such unlawful loans and/or choses in action, including, but not limited to interest, or two times the interest if such interest has already been paid pursuant to the CFA and/or the Usury Act;

(e)  CLF be ordered to notify all credit reporting agencies to which they have reported that all of the subject loans and/or chose in actions made to Florida consumers in violation of the CFA and/or Usury Act are invalid, and that all reports and scores that reflect such loans be removed;

14

(f)     Alternately, that CLF be required to disgorge their unjust enrichment by forfeiting all profits gained from Plaintiff and the Class.

(g)   Plus, attorneys' fees and costs as awardable pursuant to any applicable contract, rule or statute; and

(h)   Such other relief as the Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

Taylor, individually and on behalf of all others similarly situated, hereby demands a trial by jury on all issues so triable against CLF.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the complaint shall be served by process server to Defendant, **CERTIFIED LEGAL FUNDING, INC.**

DATED 29th day of November, 2017.

Respectfully Submitted,

/s/ Craig E. Rothburd

Craig E. Rothburd, FBN 49182
Email: crothburd@e-rlaw.com
CRAIG E. ROTHBURD, P.A.
320 W. Kennedy Blvd., Suite #700
Tampa, FL 33606-2722
Telephone: (813) 251-8800

and

Scott R. Jeeves, FBN 0905630
Primary Email: sjeeves@jeeveslawgroup.com
Secondary Email: amyers@jeeveslawgroup.com
THE JEEVES LAW GROUP, P.A.
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929

**ATTORNEYS FOR PLAINTIFF**