UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD TAYLOR, individually and on behalf
of all those similarly situated,

    Plaintiff,

v.                                                                                         Case No.: 8:18-cv-27-EAK-MAP

CERTIFIED LEGAL FUNDING, INC.,

    Defendant.

## ORDER

Before the Court is Defendant Certified Legal Funding, Inc.'s ("CLF") motion to dismiss Plaintiff Ronald Taylor's complaint ("Motion") (Doc. 6). CLF's Motion is **GRANTED**.

**I.**    **Background**

CLF is in the business of litigation funding. Litigation funding is, generally speaking, the process or mechanism through which funding companies invest in lawsuits by purchasing the right to receive a portion of any judgment or settlement.[1] In November and December of 2011, respectively, Taylor entered into two "investment agreements" with CLF. Through the investment agreements, Taylor assigned to CLF the right to receive a portion of any recovery awarded to Taylor through his pending personal injury lawsuit. As consideration, Taylor received a total of $10,839.82, with a repayment schedule that charged interest at a rate of 3.5%, compounded monthly, until full repayment was made. However, repayment of the purchase price, as well as any interest and processing and origination fees, was contingent on a successful outcome for

---

[1] As noted by Florida's Second District Court of Appeal, "[t]he literature also uses the terms ["litigation loan"], "litigation finance," "injury funds," "cash advance settlements," "advance settlement funding," "lawyer funding," or "pre-settlement advance" to describe these transactions. *Fausone v. U.S. Claims, Inc.*, 915 So. 2d 626, 627 n.1 (Fla. 2d DCA 2005) (citing Yifat Shaltiel & John Cofresi, *Litigation Lending for Personal Needs Act: A Regulatory Framework to Legitimatize Third Party Litigation Finance,* 58 Consumer Fin. L.Q. Rep. 347 (2004)).

Taylor. In other words, if the litigation proved unsuccessful (*i.e.*, if Taylor lost), CLF would lose its investment in its entirety, and Taylor would owe nothing.

Taylor alleges that the investment agreements between himself and CLF violate Florida's usury laws, as they result in an effective interest rate of up to 51%, depending on when the purchase price is repaid. Taylor, on behalf of himself and other similarly situated individuals, accordingly filed this putative class action in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, on November 29, 2017. CLF timely removed the action to this Court on January 4, 2018, and the Court determined that it properly exercises subject matter jurisdiction over Taylor's claims pursuant to the Class Action Fairness Act, Pub. L. No. 109–2, 119 Stat. 4 (codified in 28 U.S.C. §§1332(d)). *See* (Doc. 19). Count I of Taylor's complaint seeks class-wide declaratory relief pursuant to Florida's Consumer Finance Act (the "CFA"), Chapter 516, Florida Statutes. Count II seeks injunctive relief and damages pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Florida Statutes. Count III seeks damages pursuant to Florida's Interest, Usury, and Lending Practices Act (the "Usury Act"), Chapter 687, Florida Statutes. And Count IV seeks damages for unjust enrichment. CLF moves to dismiss Taylor's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

Rule 8 requires complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12 allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all factual allegations in the complaint as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

### III. Discussion

Count III[2] of Taylor's complaint seeks damages under Florida's Usury Act. The Usury Act defines as usurious "[a]ll contracts for the payment of interest upon any loan, advance of money, line of credit or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest[.]" § 687.02, Fla. Stat. The civil penalties for usury include forfeiture of all interest charged, or, in some cases, forfeiture of the right to collect the entirety of the debt. *See* § 687.04, Fla. Stat.

However, "Florida law is in accord with the basic proposition that a loan or financing agreement will not be deemed to be usurious when repayment is made subject to the occurrence of a contingency." *In re Transcapital Fin. Corp.,* 433 B.R. 900, 907 (Bankr. S.D. Fla. 2010) (citing *Valliappan v. Cruz,* 917 So. 2d 257, 260 (Fla. 4th DCA 2005); *Kraft v. Mason,* 668 So.2d 679, 684 (Fla. 4th DCA 1996); *Beausejour Corp. N.V. v. Offshore Dev. Co., Inc.,* 802 F.2d 1319, 1321 (11th Cir. 1986); *L'Arbalete, Inc. v. Zaczac,* 474 F. Supp. 2d 1314, 1324 (S.D. Fla. 2007)). Put differently, "where [a] lender risks the principal with the chance of either getting a greater return

---

[2] As explained below, the Court first addresses Taylor's usury claims under the Usury Act (Count III) and the CFA (Count I), since the remainder of his claims for damages and injunctive relief under FDUTPA (Count II) and for damages under a theory of unjust enrichment (Count IV) each rely on the theory that the investment agreements at issue here are usurious under Florida law.

than the lawful interest rate or possibly getting nothing (if the contingent event fails to occur), there is no usury." *Beausejour*, 802 F.2d at 1321 (quoting *Britz v. Kinsvater*, 87 Ariz. 385, 392, 351 P.2d 986, 991 (1960)) (alterations added).

This "basic proposition" has been applied to litigation funding agreements, nearly identical in all relevant respects to the investment agreements at issue here, and at least two Florida courts have found that the contingent nature of these types of agreements renders them not usurious as a matter of law. *See, e.g., Kraft*, 668 So.2d at 684; *Transcapital Fin. Corp.*, 433 B.R. at 907–911. For example, in *Kraft*, Florida's Fourth District Court of Appeal held that a sister's and brother's financing agreement, entered into in order to finance the brother's antitrust litigation, was not usurious because the payment of interest was contingent upon a successful outcome in litigation. 668 So. 2d at 684. The court reasoned:

> [w]hen the loan was given, any talk of recovery was pure speculation. Quite possibly, there would be *no* successful recovery from the antitrust litigation, and [the brother] might have collected nothing beyond the pay back of the loan. This contingent nature of any "interest" to [the sister] makes the agreement non-usurious.

*Id.* (emphasis in original) (alterations added).

Following the rationale of *Kraft*, Judge A. Jay Cristol, of the Southern District's Bankruptcy Court, held that an investment agreement, entered into between a funding company and two corporate plaintiffs in order to enable them to continue to prosecute a contract dispute against the United States, was not usurious because recovery of both the principal and any interest/fees was "contingent upon the [plaintiffs] ultimately prevailing in the [litigation] and realizing proceeds from which [the funding company] could be paid." *Transcapital Fin. Corp.*, 433 B.R. at 904, 907–911. Judge Cristol reasoned that the parties' investment agreement "[fell] squarely within the types of financing arrangements that Florida courts have deemed to be 'contingent' and, therefore, outside the ambit of the usury laws." *Id.* at 908–09.

Here, the Court finds that the investment agreements between CLF and Taylor, whether ultimately called "loans" or "investments," are exactly the type of contingent financing agreements confronted by the courts in *Kraft*[3] and *Transcapital Fin. Corp.* And because Florida's usury laws do not apply to these types of agreements, Taylor has not stated—and, indeed, *cannot* state—a claim under the Usury Act. Accordingly, Count III of Taylor's complaint is due to be dismissed with prejudice.

For the same reason that Taylor cannot state a claim under the Usury Act, he likewise cannot state a claim under the CFA. Count I of Taylor's complaint seeks a declaration from the Court that the investment agreements at issue here charge interest in excess of the rates permitted under the CFA. But the CFA does not impose usury restrictions that are separate and apart from those contained in the Usury Act. Rather, the CFA is regarded as *in pari materia* with Florida's usury laws, constituting a valid exception to them and permitting certain licensed lenders to charge higher interest rates (up to 30%) than those permitted by the Usury Act in certain small-dollar, consumer finance transactions. §§ 516.02, 516.031, Fla. Stat.; *Cont'l Mortg. Inv'rs v. Sailboat Key, Inc.*, 395 So. 2d 507, 509 (Fla. 1981); *Beasley v. Coleman*, 180 So. 625, 628–29 (Fla. 1938). Thus, a loan is usurious under the Usury Act if a lender charges more than 18% interest, *unless* it falls within the CFA's safe harbor. The CFA does not, however, create a right of action distinct from that for usury under the Usury Act, *see Walmsley v. Mercury Fin. Co.*, No. 1:92-cv-433-SM, 1993 WL 13930869, at *10 (S.D. Fla. Sept. 10, 1993) (unpublished), and, indeed, the CFA applies the penalties of the Usury Act for violations of its provisions, *see* § 516.031(3)(a), Fla. Stat. ("[a]ny

---

[3] As *Kraft* is a decision of a Florida appellate court, the Court is bound by that decision unless there is an indication that the Supreme Court of Florida would decide the issue otherwise. *See Geary Distrib. Co. v. All Brand Importers, Inc.*, 931 F.2d 1431, 1435 (11th Cir. 1991). Taylor has not provided the Court with any authority suggesting that the Florida Supreme Court would decline to follow *Kraft*'s rationale, and the Court has found none through its own research.

charges, including interest, in excess of the combined total of all charges authorized and permitted by this chapter constitute a violation of Chapter 687 governing interest and usury, and the penalties of that chapter apply."). Accordingly, because the CFA does not provide Taylor with a cause of action independent from his usury claim under the Usury Act, and because, as explained above, Florida decisional law exempts from coverage under the Usury Act the types of contingent litigation funding agreements at issue here, Count I of Taylor's complaint is likewise due to be dismissed with prejudice.

With respect to Taylor's remaining claims under FDUTPA and for unjust enrichment, each of those claims rely on the theory that the investment agreements at issue here are usurious. *See, e.g.,* (Doc. 2, at ¶¶59–61) ("In the course of offering, arranging, making, and collecting on . . . consumer loans to Florida borrowers, when such loans are in plain violation of the CFA and/or the Usury Act . . . CLF has engaged in and is engaging in unfair or deceptive or unconscionable acts or practices . . . in violation of Sections 501.203(3)(c), and 501.204(1), Florida Statutes."); *id.* at ¶¶76–77 ("CLF contracted for an/or charged interest to Taylor and the class at rates for [sic] in excess of what is permissible pursuant to Florida law. . . . As a result . . . CLF has been and will be unjustly enriched."). However, because, as explained above, the investment agreements are not subject to Florida's usury laws, Taylor's remaining claims are also due to be dismissed with prejudice.

### IV. Conclusion

Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Doc. 6) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE.** The Clerk is directed to close the file and terminate all pending motions.

Case No.:  8:18-cv-27-EAK-MAP

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 20th day of August, 2018.[4]

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[4] The Court takes this opportunity to echo the sentiments of Florida's Second District Court of Appeal and note that although it "has no authority to regulate these agreements" under Florida law, as it currently stands, "it would seem that the legislature might wish to examine this industry to determine whether Florida's citizens are in need of any statutory protection." *Fausone*, 915 So. 2d at 630.